O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No. 2:15-cr-00419-CAS |
|---|---|
| Plaintiff, | ) |
| v. | ) |
|  | ) **ORDER GRANTING MOTION FOR** |
| TOMMIE BALL, | ) **COMPASSIONATE RELEASE** |
|  | ) |
| Defendant. | ) |

## I. INTRODUCTION AND BACKGROUND

On July 24, 2015, a grand jury indicted defendant Tommie Ball ("Ball") with one count of distributing crack cocaine in violation of 21 U.S.C. § 841. Dkt. 1. Ball subsequently pled guilty on August 1, 2016. Dkt. 53. On August 1, 2018, the Court sentenced Ball to a term of imprisonment of sixty months and four years of supervised release. Dkts. 95, 96.

On April 20, 2020, Ball, acting *pro se*, filed a motion seeking compassionate release. Dkt. 105 ("Mot."). Ball, now represented by counsel, filed a supplement to his motion on May 6, 2020. Dkt. 108 ("Supp."). The government filed an opposition on May 22, 2020. Dkt. 112 ("Opp."). Ball filed a reply on May 29, 2020. Dkt. 116 ("Reply").

-1-

The Court held hearings on June 12, 2020, July 6, 2020, and August 5, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

"A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (internal alterations omitted). "Compassionate release provides an exception" to this general rule "in extraordinary cases." United States v. Holden, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *2 (D. Or. Apr. 6, 2020).

Prior to December 21, 2018, "the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons[.]" United States v. Esparza, No. 1:07-cr-00294-BLW, 2020 WL 1696084, at *1 n.1 (D. Idaho Apr. 7, 2020). But on December 21, 2018, Congress enacted—and the President signed into law—the First Step Act of 2018 ("the FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). Accordingly, the FSA now "permits defendants to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons." United States v. Ayon-Nunez, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020). "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." United States v. Marks, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

"Compassionate release is governed by 18 U.S.C. § 3582(c)." Willis, 382 F. Supp. 3d at 1187. The FSA modified Section 3582(c)(1)(A)(i) to allow for compassionate release when three requirements are met: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant compassionate release only if 'extraordinary and compelling reasons warrant such a reduction' and 'that such reduction is consistent with applicable policy statements issued

by the Sentencing Commission.' Third, the district court must also consider 'the factors set forth in Section 3553(a) to the extent they are applicable.'" United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). The FSA "grants broad discretion to the district courts in providing relief[.]" Jones v. United States, No. 4:98-cr-10-01, 2020 WL 219311, at *3 (E.D. Va. Jan. 6, 2020).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

The Court "may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) 'after he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) after 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Cooper, No. 2:14-cr-00228-JAD-CWH, 2020 WL 2064066, at *2 (D. Nev. Apr. 29, 2020) (internal alterations omitted) (citing 18 U.S.C. § 3582(c)(1)(A)). In addition, "[e]xhaustion occurs when the BOP denies a defendant's application[.]" United States v. Mondaca, No. 89-cr-00655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (internal citation omitted).

Here, the government contends that Ball failed to satisfy Section 3582(c)'s exhaustion requirement. See Opp. at 6. That is because Ball filed his motion with the Court on April 20, 2020, before his counsel filed an administrative request with the warden on April 29, 2020. The government therefore asserts that Ball's "motion must be dismissed, or at least stayed, until the BOP has had an opportunity to adjudicate [Ball's] request." Id. at 17. The Court does not find the government's argument availing because Ball's counsel filed the administrative request for compassionate release with the warden on April 29, 2020, and more than 30 days have elapsed since that time. See, e.g., United States v. Anderson, No. 17-cr-00595-YGR-1, 2020 WL 2838797, at *1 (N.D. Cal. June 1, 2020) (determining that inmate had satisfied exhaustion requirement where inmate filed motion for compassionate release with the court prior to running of 30-day period and prior to receiving negative response to administrative request from warden, concluding that

because 30-day period had run by date that the court issued its opinion, "the motion has since become ripe for decision[.]"); accord United States v. Shabudin, No. 11-cr-00664-JSW-1, 2020 WL 2464751, at *1 (N.D. Cal. May 12, 2020) ("Thirty days have now elapsed since Shabudin submitted his request for compassionate release to the Bureau of Prisons[.] . . . Accordingly, the exhaustion requirement is satisfied, and the Court now has jurisdiction to consider the motion."). Moreover, the government's June 10, 2020 filing indicates that the warden denied Ball's administrative request on May 29, 2020, dkt. 123, and "[e]xhaustion occurs when the BOP denies a defendant's application[.]" Mondaca, 2020 WL 1029024, at *2.

### B. Extraordinary and Compelling Reasons

Section 3582(c) "provides a path for defendants in 'extraordinary and compelling circumstances' to be released from prison early." Rodriguez, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 3582(c)(1)(A)).  A number of district courts have determined that "extraordinary and compelling" reasons for compassionate release exist "when the prisoner suffers from preexisting health conditions that might make a COVID-19 infection more lethal." United States v. O'Neil, No. 3:11-cr-00017, 2020 WL 2892236, at *6 (S.D. Iowa June 2, 2020).

Here, Ball suffers from a number of preexisting health conditions which—in light of the ongoing COVID-19 pandemic—present extraordinary and compelling reasons that warrant a reduction in Ball's sentence. For example, Ball is sixty-five years old and suffers from diabetes, hypertension, kidney disease, Hepatitis C, and prostate cancer.[1] See Dkt.

---

[1] The government acknowledges that Ball's kidney disease is so severe that Ball received a kidney transplant and takes immunosuppressive medication to minimize the risk that Ball's immune system will reject his kidney transplant. Opp. at 13; cf. United States v. Robinson, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020) (determining that inmate's medical condition, which "has required treatment with immunosuppressant medications," *inter alia*, "constitute[s] 'extraordinary and compelling reasons' that justify his immediate release.").

132. Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from these conditions have presented "extraordinary and compelling" circumstances that justify compassionate release. See Miller v. United States, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. The Center for Disease Control . . . states that individuals who are 65 and older have a higher risk of severe illness."); United States v. Rodriguez, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020) (determining, with respect to inmate suffering from conditions including diabetes and high blood pressure, "nothing could be more extraordinary and compelling than this pandemic."); United States v. White, No. 2:17-cr-00198-4-JRG, 2020 WL 3244122, at *4 (S.D. W. Va. June 12, 2020) (finding that inmate suffering from Hepatitis C demonstrated "extraordinary and compelling" circumstances justifying compassionate release in light of COVID-19 because "courts have granted release to defendants suffering from hepatitis C," and reasoning that "Hepatitis C weakens the immune system, and this weakness may continue even after one has been 'cured.'") (internal citations omitted); United States v. Hansen, No. 07-cr-00520-KAM, 2020 WL 1703672, at *7 (E.D.N.Y. Apr. 8, 2020) (determining that inmate that suffered from conditions including, *inter alia*, prostate cancer satisfied Section 3582(c)'s "extraordinary and compelling" requirement); United States v. Muniz, No. 4:09-cr-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) (granting inmate's motion for compassionate release because "Defendant has been diagnosed with serious medical conditions that, according to reports from the Center for Disease Control, make him particularly vulnerable to severe illness from COVID-19" including "end stage renal disease").

Pursuant to the FSA, "the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." United States v. Decator, No. 95-cr-0202-CCB, 2020 WL 1676219, at *3 (D.

Md. Apr. 6, 2020). In exercise of that discretion, the Court concludes that Ball has shown "extraordinary and compelling" reasons that justify a reduction in his sentence.[2]

### C. Consistency with Section 3553(a) Factors

Having determined that Ball has satisfied Section 3582(c)'s exhaustion requirement and that "extraordinary and compelling" reasons for a sentence reduction exist, "the Court must next consider the factors set forth in section 3553(a) to the extent they are applicable[.]" United States v. Redd, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020). These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims." United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citing 18 U.S.C. § 3553(a)(1)–(7)).

The Court recognizes that Ball has a long and serious criminal history. On balance, however, the Court concludes that the Section 3553(a) factors favor a reduction in Ball's sentence. For example, one such factor is "the need to provide the defendant with . . . medical care . . . or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553 (a)(2)(D). Granting Ball compassionate release would allow Ball to resume medical treatment at the UCLA Kidney Transplant Center, where Ball previously received care. Cf. Robinson, 2020 WL 1982872, at *3 (finding that Section 3553(a) factors favored inmate's release, explaining that inmate "is unlikely to be able to get the medical care he needs at Lompoc in the midst of the pandemic" and rejecting the government's argument

---

[2] The government acknowledges that Ball's "serious, chronic health conditions are likely qualifying under the policy statement in light of the risk of infection of COVID-19." Opp. at 20.

that "keeping [inmate] at Lompoc" is "the most effective manner of mitigating" inmate's "risk of exposure to COVID-19"). Moreover, another factor considers "the kinds of sentences available," and "[i]ncarceration also is not the only 'kind of sentence available.'" United States v. Brown, No. 4:05-cr-00227-1, 2020 WL 2091802, at *10 (S.D. Iowa Apr. 29, 2020) (internal citation and alteration omitted). To the contrary, "[n]oncustodial sentences also curtail prized liberty interests and the Defendant always faces the harsh consequences that wait if he violates the conditions attached to such a sentence." Id. (internal citation omitted).

In addition, Section 3553(a) also takes into account an inmate's "character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, criminal history, and drug and alcohol abuse." Mondaca, 2020 WL 1029024, at *4. Courts have determined that this factor may favor sentence reduction where an inmate "has numerous family ties, including family members who will provide for him." Id. Here, Ball's counsel submits a post-release plan indicating that if the Court were to grant Ball compassionate release, Ball "w[ould] live with his cousin in his [cousin's] home in Bellflower," that Ball's cousin will provide Ball with "access to . . . automobiles for transportation once [Ball] renews his license," and that Ball's cousin "is also available to provide transportation support." Dkt. 116-4 at 2.

### D.  Danger to Self or the Community

Prior to granting compassionate release, and "[e]ven where extraordinary and compelling reasons exist," the Court must also "consider whether the defendant is 'a danger to the safety of any other person or to the community[.]'" Mondaca, 2020 WL 1029024, at *3. "To make this assessment," the Court considers a number of factors "including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose." Id.

The government contended that Ball presents a continuing danger that renders him ineligible for compassionate release. Opp. at 21–23. The government principally relies on the fact that immediately preceding his surrender to the BOP, Ball voluntarily committed himself for psychiatric care on two occasions in March 2019. Id. The government therefore avers that Ball "poses a very real, potential danger to the community" because, according to the government, Ball: (1)"'heard voices' and 'felt like hurting someone'"; (2) "was diagnosed with unspecified psychosis as well as bipolar disorder and [was] placed on medication"; and (3) "had both homicidal and suicidal ideation." Id. at 21–23. In response, Ball explains his March 2019 hospitalizations as a "temporary mental health crisis" that was caused by stress from familial disputes and his then-looming self-surrender date. Reply at 5–6.

In response, on July 6, 2020, the Court appointed an independent expert—Dr. Saul Faerstein, M.D.—to assist the Court in determining whether Ball presented a continuing danger to himself or the community that would preclude compassionate release. Dkt. 133. After evaluating Ball's medical records and after interviewing Ball by videoconference for nearly three hours, Dr. Faerstein completed his report on July 31, 2020. Dr. Faerstein opines that: (1) Ball was misdiagnosed with bipolar disorder; (2) during his March 2019 hospitalizations, Ball "was not considered a serious suicide risk since he was hospitalized voluntarily and not placed on a 72-hour involuntary hold"; (3) Ball's hallucinations in March 2019 were possibly "caused by drugs he admitted taking"; (4) "[t]he combination of multiple stressors at that time in [Ball's] life, personal, legal and medical, contributed to severe depressive symptoms"; (5) "[t]here has been no suicidal ideation since [Ball's] self-surrender in March 2019"; and (6) Ball's "present psychiatric and physical condition is significantly improved and stabilized." Dr. Faerstein reasons that while "[i]t is not possible to make absolute predictions about whether Mr. Ball will commit criminal offenses in the future," a number of positive developments in Ball's life—including Ball's kidney transplant, his positive cancer treatment, and his improved relations with his family members—"are positive indicators of a lower probability of future drug abuse and criminal

behavior." According to Dr. Fairstein, then, "[i]f [Ball] can maintain this behavior, he will not pose a danger to others in the community or to property."

In light of Dr. Faerstein's report, the Court concludes that Ball presents a minimal, if any, risk of danger to himself or the community. The Court's original commitment order provides that "[u]pon release from imprisonment," Ball "shall be placed on supervised release for a term of four (4) years," further reducing whatever low risk of danger that Ball poses upon release.³ See Marks, 2020 WL 1908911, at *15 (finding that any risk of danger associated with sentence reduction "can be further mitigated by supervised release."); United States v. Williams, No. 3:04-cr-95-MCR, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020) (noting, with respect to inmate's motion for compassionate release, that while "the Court cannot conclude . . . that he poses no risk at all to public safety . . . the risk of him engaging in further criminal conduct is minimal and can be managed through . . . the terms of his supervised release."); see also Mondaca, 2020 WL 1029024, at *4 (noting that inmate's compassionate release posed minimal danger because inmate "will be supervised by the Probation Department upon his release from custody through a five year term of supervised release"). Indeed, were Ball to violate any of the terms and conditions of his supervised release, the Court could then "issue a warrant and revoke supervision[.]" Dkt. 96 at 2; cf. United States v. Grubbs, No. 16-cr-00228-TS, 2020 WL 3839619, at *3 (W.D. Wash. July 8, 2020) (granting motion for compassionate release in light of COVID-19 pandemic, explaining that "[t]he Court . . . is persuaded that the potentially dire

---

³ As discussed more fully below, and as set forth in the Court's amended judgment and commitment order to be issued forthwith, Ball shall spend the first year of supervised release under home confinement, subject to location or electronic monitoring, further minimizing whatever low risk of danger that Ball poses upon release. See United States v. Doshi, No. 13-cr-20349, 2020 WL 2556794, at *3 (E.D. Mich. May 20, 2020) (determining that risk of danger factor did not preclude compassionate release where court reduced inmate's sentence to time served and ordered that portion of supervised release be spent under home confinement).

consequences to defendant's health if he violates the conditions of supervised release and is returned to custody will motivate him to be compliant and cooperative.").

## IV. CONCLUSION

Ball has satisfied the requirements for compassionate release. With respect to Section 3582(c)'s exhaustion requirement, more than thirty days have elapsed since Ball filed an administrative request with the warden on April 29, 2020, and the warden denied Ball's request on May 29, 2020. Ball's serious medical conditions, which the government acknowledges make Ball even more vulnerable in light of the COVID-19 pandemic, present "extraordinary and compelling" circumstances that justify a reduction in Ball's custodial sentence. And, a reduction in Ball's sentence furthers the four purposes of sentencing identified in Section 3553(a): just punishment, deterrence, protection of the public, and rehabilitation.

Having determined that a reduction in Ball's sentence is appropriate, "[t]he final question is what relief to grant." Marks, 2020 WL 1908911, at *17. During the hearing, the government restated its position that the Court's original sentence—sixty months in prison and four years of supervised release—still remains appropriate today. The government maintained, however, that to the event that the Court were inclined to reduce Ball's sentence to time served plus four years of supervised release, it would be more appropriate for the Court to order that Ball spend the entire period of supervision under home confinement.

The Court concludes, however, that a sentence reduced to **TIME SERVED**, followed by four years of supervised release, the first year of supervision to be served under home confinement, and subject to the conditions set forth in the Court's amended judgment and commitment order to be issued forthwith, best comports with the FSA and Section 3582(c). At the conclusion of Ball's first year of supervision, which Ball shall serve under home confinement, the U.S. Probation Office may petition the Court, on a showing of good cause, to extend the period of home confinement as part of Ball's supervised release.

Finally, the Court **ORDERS** that Ball be released **FORTHWITH** and transported to Los Angeles, California, by air-carrier.[4]  After his release from BOP custody, Ball **SHALL** remain in self-quarantine for 14-days.  During the period of supervised release, and to the extent possible, Ball shall comply with any applicable national, state, and local public-health orders regarding COVID-19.

    **IT IS SO ORDERED.**
DATED:  August 5, 2020



CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

---

[4]  Numerous courts which have granted compassionate release to inmates during the ongoing COVID-19 pandemic have ordered that the BOP release those inmates forthwith. See, e.g., United States v. Mishler, No. 19-cr-00105-RS-2, 2020 WL 3791590, at *3 (N.D. Cal. July 7, 2020) (granting compassionate release, directing the BOP to "release [inmate] forthwith," and explaining that "[u]pon his release and during his term of home confinement, [inmate] will satisfy the 14-day self-quarantine requirement."); accord United States v. Bernard, No. 3:97-cr-48-RNC, 2020 WL 4462878, at *2 (D. Conn. Aug. 4, 2020); United States v. Israel, No. 95-cr-00314-JAL, 2020 WL 4362258, at *5 (S.D. Fla. July 29, 2020); United States v. Resnick, No. 14-cr-810-CM, 2020 WL 1651508, at *8 (S.D.N.Y. Apr. 2, 2020).